# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

August 11, 2016
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SARAH K. RHODES,**
**Claimant Below, Petitioner**

**vs.)    No. 15-0795**          (BOR Appeal Nos. 2049918, 2050087, 2050141,
2050183, 2050285)
(Claim No. 2012026228)

**QUAD/GRAPHICS, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner, Sarah K. Rhodes, by M. Jane Glauser, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Quad/Graphics, Inc., by Jeffrey B. Brannon, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated July 28, 2015, in which the Board affirmed the September 29, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's April 11, 2014, decision denying Ms. Rhodes's request for EMG/ NCV testing and referral to an orthopedist. The Board also affirmed the November 24, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the April 22, 2014, claims administrator's decision denying Ms. Rhodes's request to reopen her claim for temporary total disability benefits and the May 16, 2014, claims administrator's decision denying Ms. Rhodes's request for Jeffrey Whyte, M.D., to be her designated treating physician. The Board also affirmed the December 19, 2014, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the February 11, 2014, decision of the claims administrator denying Ms. Rhodes's request for vocational rehabilitation services. Next, the Board affirmed the January 7, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's February 24, 2014, decision holding the claim compensable for right ulnar neuropathy and right carpal tunnel syndrome. Finally, the Board affirmed the February 9, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's August 14, 2014, decision denying Ms. Rhodes's request to add bilateral carpal tunnel syndrome as a compensable condition and the claims administrator's August 22, 2014, decision denying her request for EMG/NCV testing and referral to Jaiyoung Ryu, M.D. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Rhodes worked as an ink jet operator at Quad/Graphics, Inc. In January of 2012, Ms. Rhodes submitted an employees' and physicians' report of occupational injury or disease. She listed August 5, 2011, as her date of injury and listed the body parts injured as the arm, elbow, and wrist. The compensability of the claim was originally denied by the claims administrator. However, after litigation, the claims administrator held the claim compensable for right cubital tunnel syndrome and right carpal tunnel syndrome.

Ms. Rhodes first treated with Dr. Whyte on May 2, 2011, with complaints of right-sided rib pain, right arm weakness, and right leg swelling. On August 5, 2011, she was seen by Dr. Whyte with complaints of shooting, burning pain in her right wrist going in to the fourth and fifth fingers which had started a few months prior. Dr. Whyte completed an attending physician's return to work recommendations form on August 31, 2011. He listed the diagnosis as ulnar neuropathy on the right. He opined the etiology of the condition was unknown. He noted Ms. Rhodes was able to return to work on August 18, 2011, with light duty restrictions of assist only with the right upper extremity until September 1, 2011.

Troy Foster, M.D., evaluated Ms. Rhodes on September 29, 2011. Ms. Rhodes provided a history of pain in her right elbow that had been on-going since August. Dr. Foster noted her EMG studies were positive for ulnar neuropathy and carpal tunnel syndrome. In his opinion, the ulnar neuropathy was worse than the carpal tunnel syndrome. Dr. Foster performed a release of the right cubital tunnel and right carpal tunnel on October 7, 2011. Ms. Rhodes was seen for follow-up on October 19, 2011, and Dr. Foster noted she was neurovascularly intact and was doing well. He released her to return to full duty work on November 6, 2011. However, she returned to Dr. Foster on November 15, 2011, for increased pain in her right arm. She was given work restrictions of left-handed work only, no climbing, and no push/pull.

On December 5, 2011, Dr. Whyte noted an increase in right-handed grip strength. He completed the physician section of the employees' and physicians' first report of occupational injury or disease form on January 18, 2012. He noted Ms. Rhodes had right arm/hand neuropathy that was work-related. The initial treatment was on August 5, 2011, and she was to be off of work from August 26, 2011, to August 29, 2011. Dr. Whyte also completed an attending physician's return to work recommendations form listing the diagnoses of right ulnar neuropathy and right carpal tunnel syndrome. However, on this form, he stated he was unable to determine if the conditions were work-related. He advised that Ms. Rhodes could return to work as of January 18, 2012, with the restriction of left-handed work only.

On September 4, 2012, Dr. Whyte diagnosed ulnar neuropathy, requested Ms. Rhodes have an orthopedic consultation, and completed a diagnosis update form with the primary

2

diagnosis of bilateral ulnar neuropathy. Ms. Rhodes resigned her position on October 29, 2012. Dr. Whyte then evaluated her on November 18, 2012, when he completed a medical statement in which he opined that Ms. Rhodes's condition was work-related. He requested a prescription for Gabapentin be authorized and again requested an evaluation by an orthopedic surgeon due to persistent symptoms and deterioration of the right arm, pain, and difficulty picking things up.

Sushil Sethi, M.D., evaluated Ms. Rhodes on December 20, 2013. He noted the current complaints included right wrist achiness and soreness once in a while with radicular movement causing more symptoms. He noted Ms. Rhodes had pain in the right hand for many years, including x-rays back to 1989 for the right hand and wrist. Dr. Sethi diagnosed mild sprain of the right wrist. In his opinion, treatment was not medically related to the work injury and had been excessive for a sprain. He also noted the lapse in treatment between 2012 and 2013. Dr. Sethi assessed 2% impairment. In a January 17, 2014, addendum, Dr. Sethi opined that the diagnoses of ulnar neuropathy and right carpal tunnel syndrome are subjective. In his opinion, work activity did not cause this problem.

On February 6, 2014, Dr. Whyte requested an EMG/NCV study and orthopedic referral to reassess Ms. Rhodes's condition. On February 17, 2014, Dr. Whyte saw Ms. Rhodes for follow-up and completed a reopening application for temporary total disability benefits. He opined she was disabled from November of 2012 to the present.

ChuanFang Jin, M.D., examined Ms. Rhodes on July 2, 2014. She presented with a chief complaint of right ulnar neuropathy and carpal tunnel syndrome. Dr. Jin diagnosed chronic bilateral ulnar neuropathy, right more severe than left, with unclear etiology. In her opinion, the examination was not consistent with carpal tunnel syndrome of either upper extremity. She noted that the medical evidence in several of the doctor's reports she reviewed showed clinical evidence of right ulnar neuropathy but no neurological deficit documented in the left hand. Ms. Rhodes said her symptoms in the left upper extremity progressed after she stopped working. There was clinical evidence of left ulnar neuropathy during her examination that had not been present during prior physicians' examinations. Therefore, in Dr. Jin's opinion, the left ulnar neuropathy was not work-related.

The compensable conditions for Ms. Rhodes are right carpal tunnel syndrome and right ulnar neuropathy. She is requesting vocational rehabilitation benefits, EMG/NCV testing, a referral to Dr. Ryu, reopening of the claim for temporary total disability benefits, the addition of additional compensable conditions, as well as the designation of Dr. Whyte as her treating physician. In addressing the request for vocational rehabilitation benefits, the Office of Judges, in its December 19, 2014, Order, noted this type of benefit is only available to assist an injured worker if they are unable to return to work due to the compensable injury. The Office of Judges found Ms. Rhodes failed to submit any reliable evidence establishing that her inability to work is related to the surgically corrected right upper extremity. She testified that she now has problems with her left upper extremity, and her right upper extremity has gotten worse even though she had not worked since October 29, 2012. Additionally, Ms. Rhodes voluntarily resigned her position, thus removing herself from employment. The Office of Judges noted she was free to do

so, but she could not then request vocational rehabilitation benefits more than a year later asserting that her removal from employment is related to her claim.

The Office of Judges addressed the claims administrator's decision holding the claim compensable for only right carpal tunnel syndrome and right ulnar neuropathy in its January 7, 2015, Order. It determined there was no reliable evidence that any conditions other than right carpal tunnel syndrome and right ulnar neuropathy are causally related to this claim. In making this determination, the Office of Judges relied on the medical records of Dr. Whyte showing Ms. Rhodes did not treat with him from March 21, 2013, until January 16, 2014. It also relied on the reports of Dr. Sethi and Dr. Jin, neither of whom opined the left upper extremity complaints were work-related. Moreover, the Office of Judges pointed out that Ms. Rhodes's left upper extremity complaints did not start until almost a year after she resigned her employment.

Regarding the request for EMG/NCV testing and an orthopedic referral, the Office of Judges found in its September 29, 2014, Order, that the evidence failed to demonstrate the requested treatment was medically related and reasonably necessary for the injury. The Office of Judges found that the compensable condition was surgically corrected in October of 2011. Ms. Rhodes stopped working for Quad/Graphics, Inc., on October 29, 2012, and testified that her condition had worsened. All of this weighed against a finding that the current condition was work-related.

The request to reopen the claim for temporary total disability benefits was addressed in the November 24, 2014, Order of the Office of Judges. It determined Ms. Rhodes had not established a prima facie cause for reopening her claim. As this Court held in *Harper v. State Workmen's Compensation Commissioner*, 160 W. Va. 364, 234 S.E. 2d 779 (1977) prima facie cause for a reopening of a claim means nothing more than evidence which would tend to justify, but not compel, the inference that there has been a progression or aggravation of the former injury. The Office of Judges found that in her application requesting the claim be reopened, Ms. Rhodes stated she had suffered an aggravation or progression of her condition. However, in the physician's portion of the application, Dr. Whyte stated there had not been an aggravation or progression of the disability. Additionally, Dr. Jin determined she had reached maximum medical improvement prior to the application being filed.

The request for Dr. Whyte to be designated as the treating physician was also addressed in the Office of Judges' November 24, 2014, Order. It determined Quad/Graphics, Inc., has an approved managed care health plan. Ms. Rhodes had to select a medical provider from that program unless one of the exceptions listed in West Virginia Code of State Rules §85-20-13 (2006) applies. None of the exceptions were applicable to Ms. Rhodes. Therefore, she was not able to opt out of the managed care plan. Dr. Whyte is not a provider within the managed care health plan. Ms. Rhodes could not choose him to be her treating physician.

The denial of the addition of bilateral carpal tunnel syndrome as a compensable component in the claim was addressed by the Office of Judges in its February 9, 2015, Order. It determined that the issue had already been decided in a January 7, 2015, Order. Pursuant to that

4

Order, the diagnoses of left ulnar neuropathy and left carpal tunnel syndrome are not compensable. The Office of Judges noted that decision was on appeal to the Board of Review.

The Office of Judges also addressed the second request for EMG/NCV studies and a referral to Dr. Ryu in its February 9, 2015, Order. It determined Ms. Rhodes was requesting treatment related to her bilateral upper extremities. The left upper extremity conditions have not been found to be compensable. The Office of Judges once again stated that her testimony and the records of Dr. Whyte support the finding that the current complaints are not work-related. Therefore, the denial of the request was proper.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed all of its Orders. Each one of the Office of Judges' Orders is supported by the evidence. Ms. Rhodes's only compensable conditions are right carpal tunnel syndrome and right cubital tunnel syndrome. She failed to prove she is entitled to any additional benefits due to those conditions. Therefore, it was proper for her requests to be denied.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: August 11, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II